

**T**HE **C**ITY OF **N**EW **Y**ORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**RAMY LOUIS**
*Senior Counsel*
Phone: (212) 356-2386
Fax: (212) 356-3509
rlouis@law.nyc.gov

November 30, 2022

**VIA ECF**
Honorable William F. Kuntz, II
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: Cassandra Alexander, et al., v. City of New York, et al.,
     21-CV-5816 (WFK) (RLM)

Your Honor:

  I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department, and the attorney representing defendants City of New York, Detective Manny Sharma, Sergeant James Priore, and retired Sergeant Damon Martin (collectively "defendants"), in the above-referenced action. Defendants respectfully submit this letter requesting a pre-motion conference in anticipation of defendants' motion for summary judgment.

## Background

  On February 7, 2019, complainant Octavia Griffith Miller reported that she had been assaulted on February 5, 2019. Specifically, Ms. Miller informed defendants, then Officers Priore and Sharma, and Sergeant Martin, that she lived with her mother, Cassandra Alexander. Ms. Miller stated that approximately two weeks earlier, she was involved in an argument with her mother and that, as a result, Ms. Miller gathered some of her belongings and left the residence. Ms. Miller reported that she only took a few items as she planned on returning home, that she was not evicted, and that she helps to pay the rent.

  Ms. Miller further told the defendants that on February 5, 2019, she returned to the residence to gather some more of her belongings and that while she was searching through a dresser drawer for some of her clothing, plaintiff Edd Alexander (Cassandra Alexander's boyfriend at the time of the incident), intentionally slammed a drawer on her hands. Cassandra arrived at the residence a short time later. Ms. Miller reported that both plaintiffs then assaulted her and Edd menaced her with a golf club. Ms. Miller also advised defendants that Cassandra sold marijuana from the residence, possessed a black firearm, and that Ms. Miller last saw the firearm on Cassandra's bed on February 5, 2019.

Defendants, along with the Ms. Miller, went to the residence on February 7, 2019. Ms. Miller stayed in the police vehicle while the defendant officers entered the building. The officers spoke to Cassandra in the hallway outside the apartment and explained that they were there to assist Ms. Miller in retrieving her belongings, asked for permission to enter the apartment, and advised her that Ms. Miller alleged that she had a dispute with plaintiffs and was assaulted by Edd two days before. Cassandra refused to let the officers in. At some point, Cassandra abruptly ceased the conversation with the officers and proceeded to enter her apartment. Concerned about the potential destruction of evidence and/or the use of the firearm, Sergeant Martin prevented Cassandra from closing the apartment door on the officers. Sergeant Martin pushed the door open, and the officers observed Edd Alexander immediately behind the door, and handcuffed him. Cassandra ran into her bedroom toward the back of the apartment, turned off the bedroom light and tried to put clothes over her bed in attempt to hide the marijuana that was on her bed. Detective Sharma saw the marijuana on the bed and handcuffed Cassandra. The plaintiffs were escorted out of the apartment and transported to the 75th Precinct for arrest processing; the residence was secured while a search warrant was obtained and executed on February 8, 2019. During the warrant execution, marijuana, marijuana paraphernalia, an imitation firearm, stun gun, machete, and a golf club, were recovered.

In November 2019, Cassandra Alexander accepted an Adjournment in Contemplation of Dismissal and Edd Alexander's criminal case was dismissed on motion of the prosecutor who indicated that the complainant was uncooperative with the prosecution.

## False Arrest

Probable cause is a complete defense to a claim for false arrest. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). "[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); see also Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992) (The veracity of citizen complainants who are the victims of the very crime they report is assumed). Here, there was probable cause to arrest the plaintiffs based on the complaining victim's allegations that she was assaulted by both plaintiffs and menaced with a golf club by Edd. See Curley v. Village of Suffren, 268 F. 3d 65, 70 (2d Cir. 2001) ("When information regarding an alleged crime is received from a putative victim or an eyewitness, probable cause exists…unless the circumstances raise doubt as to the person's veracity"). Therefore, the false arrest claim should be dismissed as a matter of law.

## Unlawful Entry and Qualified Immunity

Plaintiffs' unlawful entry claim should also be dismissed since there were exigent circumstances justifying the warrantless entry. Payton v. New York, 445 U.S. 573 (1979). Exigent circumstances have been found to exist whenever, though there is probable cause to search, urgent events make it impossible to obtain a warrant in sufficient time to preserve evidence threatened with removal or destruction. United States v. Gallo-Roman, 816 F.2d 76, 79-80 (2d Cir. 1987); People v. Knapp, 52 N.Y.2d. 689, 696 (1981). Exigent circumstances have been found to exist where there was the possibility of illegal drugs being destroyed. See, e.g., People v. Richardson, 132 A.D.3d 1313, 1315 (4th Dept. 2015) (court found warrantless entry was lawful; reasoning that exigent circumstances arose because there was probable cause to believe that there was marijuana inside the apartment coupled with the co-defendant's attempted

slamming of the door on officers, stating that "it is well known that persons who engage in drug trafficking will often attempt to dispose of the narcotics or escape.") (citing People v. Brown, 274 A.D.2d. 941, 942 (2000)). Exigent circumstances have also been found where there is a risk that a firearm might be used. See, e.g., United States v. McCoy, 407 Fed. App'x 514, 515 (2d Cir. 2010) (warrantless entry justified where officers were informed of a gun inside defendant's home, and where, despite a statement by defendant's girlfriend that no one was home, police officer heard noise coming from inside the house); People v. Vernon B, 2012 N.Y. Misc. LEXIS 5253 (Kings Crim. Ct. 2012) (warrantless entry found to be objectively reasonable because the occupants were aware of the presence of police officers had access to the gun, and the gun could have been removed and/or used to harm someone had police not entered).

Here, the defendant officers were presented with information from what appeared to be a credible witness based on her familial relationship with Cassandra, and her residence in and/or recent access to Cassandra's apartment. Specifically, the witness notified defendants that Cassandra was selling marihuana from her apartment and also had a firearm in the apartment. Accordingly, as there was probable cause to believe that there was marijuana and a firearm inside the apartment, exigent circumstances arose when Cassandra abruptly stopped speaking with the officers in the hallway, went into the apartment, and tried closing the door on the officers. It was reasonable for defendants to believe that Cassandra could or would dispose of the marijuana or firearm (or retrieve and use the firearm) if she was allowed back inside the apartment. Therefore, the officers' entry was reasonable. At the very least, the officers are entitled to qualified immunity as reasonable officers could surely disagree as to whether exigent circumstances arose when, while knowing that there was marijuana inside the apartment that could be disposed of, or a firearm that could be used, the plaintiff attempted to flee after being informed of a complaint made by her daughter.

### Excessive Pre-Arraignment Detention

Plaintiffs' excessive pre-arraignment detention claims should also be dismissed. The Supreme Court has designated 48 hours as the "presumptive outside limit for confinement" prior to a probable cause determination. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Bryant v. City of New York, 404 F. 3d 128, 138 (2d Cir. 2005). Here, while the complaint alleges that plaintiffs were held for over 48 hours prior to arraignment, documents in the record demonstrate that Cassandra was arraigned within 46 hours and 9 minutes and Edd was arraigned within 46 hours and 13 minutes. Furthermore, there is nothing in the record to support that there was an unreasonable delay in plaintiffs' arraignments. Therefore, any claim for excessive detention should be dismissed.

Defendants thank the Court for its time and consideration in this matter.

Respectfully submitted,

/s/ *Ramy Louis*

Ramy Louis
*Senior Counsel*

cc:     All Counsel of Record (via ECF)

3