Docket No.: 21-CV-5816 (WLK) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CASSANDRA ALEXANDER and EDD ALEXANDER,

Plaintiffs,

-against-

THE CITY OF NEW YORK, SGT. DAMON MARTIN;
SGT. JAMES PRIORE; OFFICER MANNY SHARMA;
and OFFICER DOES 1-5

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel of the City of New York*
*Attorney for defendants City of New York,*
*Sharma, Martin, and Priore*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Ramy Louis*
*Tel: (212) 356-2386*
*email: rlouis@law.nyc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

STANDARD OF REVIEW ............................................................................................. 8

ARGUMENT

       POINT I

              PLAINTIFFS CANNOT PREVAIL ON THEIR
              FALSE ARREST CLAIM BECAUSE THERE
              WAS PROBABLE CAUSE TO ARREST THEM
              FOR ASSAULT, AS WELL AS OTHER
              CHARGES .......................................................................... 10

       POINT II

              PLAINTIFFS' UNLAWFUL ENTRY CLAIM
              SHOULD BE DISMISSED .................................................... 13

              A. Exigent Circumstances Justified the
                 Warrantless Entry ........................................................ 13

              B. Edd Alexander Does Not Have Standing to
                 Challenge the Entry ..................................................... 15

       POINT II

              THERE IS NOTHING IN THE RECORD TO
              SUPPORT PLAINTIFFS' CLAIM OF
              UNREASONABLE SEARCH AND SEIZURE ................................... 15

       POINT III

               PLAINTIFFS' CONSPIRACY CLAIM SHOULD
               BE DISMISSED BECAUSE IT IS
              UNDISPUTED THAT THE ALLEGED
              CONSPIRATORS ARE EMPLOYEES OF A
              SINGLE ORGANIZATION AND THEIR
              ALLEGED ACTIONS WERE TAKEN IN THE
              COURSE OF THEIR EMPLOYMENT ................................. 16

**Page**

POINT IV

        PLAINTIFFS' FAILURE TO INTERVENE
CLAIM FAILS BECAUSE PLAINTIFFS
ALLEGE THAT ALL DEFENDANTS
DIRECTLY PARTICIPATED IN
UNLAWFULLY ENTERING THE RESIDENCE
AND FALSELY ARRESTING THE
PLAINTIFFS ........................................................................16

POINT V

        PLAINTIFFS' FABRICATION OF EVIDENCE
CLAIM SHOULD BE DISMISSED ......................................17

POINT VI

        PLAINTIFFS' EXCESSIVE PRE-
ARRAIGNMENT DETENTION CLAIM
SHOULD BE DISMISSED BECAUSE
PLAINTIFFS WERE ARRAIGNED IN LESS
THAN 48 HOURS AND THERE IS NOTHING
IN THE RECORD TO SUPPORT THAT THERE
WAS AN UNREASONABLE DELAY IN
THEIR ARRAIGNMENTS....................................................20

POINT VII

        PLAINTIFF CASSANDRA ALEXANDER'S
EXCESSIVE FORCE CLAIM MUST BE
DISMISSED ........................................................................21

POINT VIII

        PLAINTIFFS' DUE PROCESS VIOLATIONS
UNDER § 1983 CLAIM MUST BE DISMISSED ................................23

        A. Plaintiff Has Failed to Allege a Brady
Violation .........................................................................23

POINT IX

        PLAINTIFF'S MONELL CLAIM MUST BE
DISMISSED ........................................................................24

CONCLUSION.........................................................................................25

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                      <u>**Pages**</u>

<u>Adekoya v. Fed. Bureau of Prisons</u>,
   375 Fed. Appx. 119 (2d Cir. 2010)...............................................................................18, 19

<u>Alm v. Moreth</u>,
   694 F. Supp. 1322 (N.D.Ill. 1988) ...........................................................................................22

<u>Anderson v. Creighton</u>,
   483 U.S. 635 (1987)...................................................................................................................12

<u>Anderson v. Liberty Lobby, Inc.</u>,
   477 U.S. 242 (1986).....................................................................................................................8

<u>Ashley v. City of N.Y.</u>,
   No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201
   (E.D.N.Y. Apr. 17, 2017)...........................................................................................................18

<u>Azurite Corp., Ltd. v. Amster & Co.</u>,
   844 F. Supp. 929 (S.D.N.Y. 1994) .............................................................................................9

<u>Berg v. Kelly</u>,
   343 F. Supp. 3d 419 (S.D.N.Y. 2018)......................................................................................24

<u>Bernard v. United States</u>,
   25 F.3d 98 (2d Cir. 1994)..........................................................................................................10

<u>Brumfield v. Jones</u>,
   849 F.2d 152 (5th Cir. 1988) ....................................................................................................23

<u>Bryant v. City of New York</u>,
   404 F. 3d 128 (2d Cir. 2005).....................................................................................................20

<u>Casciani v. Nesbitt</u>,
   659 F. Supp. 2d 427 (W.D.N.Y. 2009) .......................................................................................9

<u>Celotex Corp. v. Catrett</u>,
   477 U.S. 317 (1986).....................................................................................................................8

<u>County of Riverside v. McLaughlin</u>,
   500 U.S. 44 (1991)....................................................................................................................20

<u>Covington v. City of New York</u>,
   171 F.3d 117 (2d Cir. 1999)......................................................................................................10

<u>Creese v. City of N.Y.</u>,
   815 F. App'x 586 (2d Cir. 2020) ..............................................................................................20

**<u>Cases</u>**                                                                                                 **<u>Pages</u>**

<u>Curley v. Vill. of Suffern</u>,
    268 F.3d 65 (2d Cir. 2001)................................................................................17

<u>Devenpeck v. Alford</u>,
    543 U.S. 146 (2004).....................................................................................10

<u>Drummond v, Castro</u>,
    522 F. Supp. 2d 667 (S.D.N.Y. 2007)...........................................................22

<u>Esmont v. City of New York</u>,
    371 F. Supp. 2d 202,215 (E.D.N.Y. 2005) ..............................................22, 23

<u>Ganek v. Leibowitz</u>,
    874 F.3d 73 (2d Cir. 2017)............................................................................20

<u>Garcia v. Doe</u>,
    779 F.3d 84 (2d Cir. 2014)............................................................................12

<u>Garnett v. Undercover Officer C0039</u>,
    838 F.3d 265 (2d Cir. 2016).........................................................................18

<u>Gil v. County of Suffolk</u>,
    590 F, Supp. 2d 360 (E,D.N.Y. 2008) .........................................................21

<u>Girard v. 94th St. & Fifth Ave. Corp.</u>,
    530 F.2d 66 (2d Cir. 1976)............................................................................16

<u>Gonzalez v. City of New York</u>,
    No, 98 Civ, 3084 (ILG), 2000 U.S. Dist. LEXIS 5230
    (E.D.N.Y. 2000).............................................................................................21

<u>Graham v. Connor</u>,
    490 U.S. 386 (1989).....................................................................................21

<u>Griffin v. City of N.Y.</u>,
    287 F. Supp. 2d 392 (S.D.N.Y. 2003)..........................................................24

<u>Hannula v. City of Lakewood</u>,
    907 F.2d 129 (10th Cir. 1990) ................................................................22, 23

<u>Hoffman v. Nassau County Police Department</u>,
    No. 06-CV-1947, 2008 U.S. Dist. LEXIS 35377
    (E.D.N.Y. 2008).............................................................................................16

<u>Hydro Investors, Inc. v. Trafalgar Power Inc.</u>,
    227 F.3d 8 (2d Cir. 2000)..............................................................................19

**Cases**                                                                      **Pages**

Jackson v. City of New York,
    939 F. Supp. 2d 219 (E.D.N.Y. 2013) ...................................................17

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)...........................................................10

Jovanovic v. City of New York,
    486 Fed. Appx. 149 (2d. Cir. 2012)............................................18, 19

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)............................................................12

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012).............................................................10

Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000)..........................................................10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).......................................................................9

Maxwell v. City of New York,
    380 F (2d Cir. 2004).....................................................................21

McGhie v. Main,
    2011 U.S. Dist. LEXIS 117606 (E.D.N.Y. 2011)............................18, 19

Miloslavsky v. AES Eng'g Society,
    808 F. Supp. 351 (S.D.N.Y. 1992) ..............................................10, 13

Minnesota v. Carter,
    525 U.S. 83 (1998)........................................................................15

Morgan v. County of Nassau,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) ...........................................17

Nnodimele v. Derienzo,
    No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881
    (E.D.N.Y. 2016)...........................................................................19

Nogbouv. Mayrose,
    07 Civ. 3763 (RWS), 2009 U.S. Dist. LEXIS 96118 (S.D.N.Y. 2009),
    aff'd, 2010 U,S, App, LEXIS 24424 (2d Cir. 2010) ........................21

O'Neill v. Town of Babylon,
    986 F.2d 646 (2d Cir. 1993)..........................................................10

**Cases**                                                                                    **Pages**

Occupy Nashville v. Haslam,
    769 F.3d 434 (6th Cir. 2014) ................................................................................12

Payton v. New York,
    445 U.S. 573 (1979)............................................................................................13

People v. Brown,
    274 A.D.2d. 941 (2000) ......................................................................................14

People v. Knapp,
    52 N.Y.2d. 689 (1981) ........................................................................................13

People v. Mercica,
    170 A.D.2d 181 (1st Dept. 1991)........................................................................15

People v. Richardson,
    132 A.D.3d 1313 (4th Dept. 2015) .....................................................................13

People v. Rodriguez,
    2001 N.Y. Misc. LEXIS 776 (Bronx Co. Sup. Ct. 2001) ....................................15

People v. Symmonds,
    111 A.D.2d 884 (2nd Dept. 1985) ......................................................................15

People v. Vernon B.,
    2012 N.Y. Misc. LEXIS 5253 (Kings Crim. Ct. 2012) .......................................14

Plumhoff v. Rickard,
    134 S. Ct. 2012 (2014).......................................................................................12

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995)......................................................................................9

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997)................................................................................19

Roseboro v. Gillespie,
    791 F. Supp. 2d 353 (S.D.N.Y. 2011)..................................................................9

Scott v. Harris,
    550 U,S. 372 (2007)...........................................................................................21

Sforza v. City of New York,
    2009 U.S. Dist. LEXIS 27358 (S.D.N.Y.2009).................................................24

**Cases**                                                                 **Pages**

Singer v. Fulton County,
    63 F.3d 110 (2d Cir. 1995).................................................................10

Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp.,
    No. 03-CV-1414 (MP), 2003 U.S. Dist.
    LEXIS 22655 (S.D.N.Y. 2003).........................................................9

Twin Laboratories, Inc. v. Weider Health & Fitness,
    900 F.2d 566 (2d Cir. 1990)..............................................................9

United States v. Brown,
    596 F. Supp. 2d 611 (E.D.N.Y. 2009) ............................................15

United States v. Coppa,
    267 F.3d 132 (2d Cir. 2001)............................................................23

United States v. Rivas,
    377 F.3d 195 (2d Cir. 2004)............................................................23

Usavage v. Port Auth. of New York & New Jersey,
    932 F Supp 3d 575 (SDNY 2013) ..................................................22

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000),
    cert. denied, 540 U.S. 811 (2003) .....................................................9

White v. Pauly,
    137 S. Ct. 548 (2017).......................................................................12

Wiles v. City of New York,
    2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. 2016)
    aff'd, 2018 U.S. App. LEXIS 5610 ................................................24

Wood v. Moss,
    134 S. Ct. 2056 (2014)....................................................................12

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)............................................................10

**Statutes**

42 U.S.C. §1983.......................................................................1, 23, 24

Fed. R. Civ. P. 56(c) ...........................................................................1, 8

N.Y. Penal Law § 10.00(9) .................................................................11

**<u>Statutes</u>**                                                                              **<u>Pages</u>**

N.Y. Penal Law §§ 110/120.00(1) ...................................................................11

N.Y. Penal Law § 120.00(1) ...........................................................................11

N.Y. Penal Law § 240.26(1) ...........................................................................11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

CASSANDRA ALEXANDER and EDD ALEXANDER,

                                        Plaintiffs,

                      -against-

THE CITY OF NEW YORK, SGT. DAMON MARTIN; SGT.
JAMES PRIORE; OFFICER MANNY SHARMA; and            21 Civ. 5816 (WFK) (RLM)
OFFICER DOES 1-5

                                        Defendants.

------------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of New York ("City"), Detective Manny Sharma, Sergeant James Priore, and retired Sergeant Damon Martin, (collectively "defendants"), by their attorney, Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs Cassandra and Edd Alexander allege federal claims under 42 U.S.C. §1983 for (1) false arrest, (2) unlawful entry, (3) unreasonable search and seizure, (4) conspiracy, (5) failure to intervene, (6) fabrication of evidence, (7) post-arrest over-detention, (8) excessive force, (9) due process violations, and (10) municipal liability. Defendants now move for summary judgment on all claims.

Plaintiffs' claims fail on the merits. Plaintiffs' false arrest claim fails because there was probable cause to arrest plaintiffs for assaulting the complainant. Plaintiffs' unlawful entry claim fails because exigent circumstances justified a warrantless entry based on the complainant

reporting that Cassandra Alexander possessed a firearm and marijuana inside the apartment. At a minimum, the defendant police officers are entitled to qualified immunity. There is no evidence in the record to support plaintiffs' unlawful search and seizure, due process violations, and over-detention claims. Plaintiffs' conspiracy and failure to intervene claims fail based on the facts as pled. Plaintiffs' fabrication of evidence claim fails because it is based on a mere mistake. Plaintiff Cassandra Alexander's excessive force claim fails because she did not incur significant injuries as a result of the alleged excessively tight handcuffing and, given the circumstances, it was reasonable to believe that it was unsafe to loosen the handcuffs. Finally, defendant City is entitled to summary judgment on plaintiffs' municipal liability claim because plaintiffs failed to conduct any Monell discovery.

## **STATEMENT OF FACTS**

Plaintiffs initiated this action by filing the Complaint on October 18, 2021, naming the City, Sergeant Damon Martin, Sergeant James Priore, and Detective Manny Sharma, alleging, *inter alia*, federal claims of false arrest, unlawful entry, fabrication of evidence, over-detention, and municipal liability. (See Ex. A (Compl.); ECF No. 1.) Plaintiffs thereafter filed their First Amended Complaint ("FAC") on April 1, 2022, adding an excessive force claim alleging that overtight handcuffs were placed on Cassandra Alexander. (See Ex. B (FAC); ECF No. 15.)

Plaintiffs have been married since July 5, 2019. Ex. C (Cassandra Dep.) at 27:16-23. Plaintiff Cassandra Alexander's maiden name is Miller. Ex. C (Cassandra Dep.) at 21:20-25; 22:1. Cassandra and Edd Alexander began living together in April 2019. Ex. G (Edd Dep.) at 14:11-19. In February 2019, Edd Alexander was living Rhode Island and came to visit Cassandra. Ex. G (Edd Dep.) at 26:11-21; 27:5-14.

Octavia Miller-Griffith ("Ms. Miller-Griffith") is Cassandra Alexander's daughter. Ex. C (Cassandra Dep.) at 29:7-12. On February 7, 2019, Ms. Miller-Griffith went to the NYPD 75th

2

Precinct and spoke with Sergeant Priore and Detective Sharma. Ex. D (Sharma Dep.) at 11:16-19; 12:13-19; 14:3-20; Ex. E (Priore Dep.) at 12:1-4, 12:19-25. Ms. Miller-Griffith stated that she was looking for a police escort to gather property from her apartment. Ex. E (Priore Dep.) at 12:19-25, 13:2-19. Ms. Miller-Griffith explained that she lived at her apartment with her mother Cassandra for approximately eight years; however, the two had gotten into an argument a few weeks prior and Ms. Miller-Griffith was temporarily staying elsewhere in order to quell the altercation – as such, she wanted to gather some of her and her child's belongings from the apartment. Ex. D (Sharma Dep.) at 20:2-15; Ex. E (Priore Dep.) at 18:3-15.

Ms. Miller-Griffith also reported that on February 5, 2019, she got into a physical altercation with Cassandra and a man who was in a relationship with her mother. Ex. D (Sharma Dep.) at 17:5-25; 18:2-6; Ex. E (Priore Dep.) at 13:2-8. Specifically, Ms. Miller-Griffith stated that on February 5, 2019 she went to her apartment to gather some of her and her child's belongings. Ex. E (Priore Dep.) at 13:8-12. When Ms. Miller-Griffith entered the apartment, there was a man (Edd Alexander) inside. Ex. E (Priore Dep.) at 13:12-14.

While Ms. Miller-Griffith was going through a dresser drawer, the man slammed the drawer on her hands, causing her pain. Ex. D (Sharma Dep.) at 17:5-25; 18:2-6; 42:3-6; Ex. E (Priore Dep.) at 13:14-19. The man also picked up a golf club and menaced her with it. Ex. E (Priore Dep.) at 24:20-24. The man called Cassandra on his cellphone. Ex. D (Sharma Dep.) at 17:17-18. Cassandra then came to the apartment. Ex. D (Sharma Dep.) at 17:17-25; 18:1-6; Ex. E (Priore Dep.) at 13:17-19. Ms. Miller-Griffith reported that a verbal argument became physical, and resulted in plaintiffs punching and kicking her, and physically throwing her out of the apartment. Ex. D (Sharma Dep.) at 17:17-25; 18:2; Ex. E (Priore Dep.) at 13:17-19.

Ms. Miller-Griffith also reported that she saw a firearm on Cassandra's bed on February 5, 2019, that Cassandra previously pointed the firearm at her, and that Cassandra sold marijuana from inside the apartment. Ex. D (Sharma Dep.) at 25:2-10; Ex. E (Priore Dep.) at 16:12-13; 23:7-11; 43:17-23. Detective Sharma contacted the Field Intelligence supervisor, Sergeant Damon Martin after Ms. Miller-Griffith mentioned the firearm. Ex. D (Sharma Dep.) at 23:5-10; 23:20-25; 24:2-3. Sergeant Damon Martin's job responsibilities included gathering valuable and actionable intelligence on trends regarding shootings or gang activity to locate firearms and stop violence. Ex. F (Martin Dep.) at 20:12-23. Sergeant Martin then had a conversation with Ms. Miller-Griffith on February 7, 2019. Ex. D (Sharma Dep.) at 31; 7-25; Ex. F (Martin Dep.) at 13:14-16.

During her conversation with Sergeant Martin, Ms. Miller-Griffith again indicated that she had lived at the apartment for the past eight years, that she went to the apartment to gather some of her child's clothes, that she was met by plaintiffs, and while trying to retrieve the clothes, she was assaulted, beat and punched by both plaintiffs, and her hand was slammed in the drawer by Edd Alexander. Ex. F (Martin Dep.) at 14:14-25; 15:2. She also informed Sergeant Martin that Cassandra was in possession of a firearm and marijuana. Id.

On February 7, 2019, defendants, along with other non-party members of the New York City Police Department ("NYPD"), transported Ms. Miller-Griffith to the subject apartment building; she stayed inside a marked police vehicle while the defendants officers proceeded to the apartment first. Ex. E (Priore Dep.) at 25:18-22; 27:3-10; 34:4-7. After entering the building, officers approached the apartment and knocked on the door. Ex. E (Priore Dep.) at 34:8-15. Cassandra answered the door. Ex. E (Priore Dep.) at 34:8-15. The defendants had a conversation with Cassandra in the hallway outside of the apartment. Ex. F (Martin Dep.) at 44:7-11. In sum

and substance, defendants advised Cassandra that her daughter reported that she lived in the apartment, wanted to retrieve some of her belongings, but that Cassandra was not permitting her to do so. Ex. D (Sharma Dep.) at 53:11-20; Ex. C (Cassandra Dep.) at 82:18-22. Cassandra was aware that Ms. Miller-Griffith reported that Cassandra had physically assaulted her a couple of days before. Ex. C (Cassandra Dep.) at 76:21-25; 77:13-16; 148:18-20. At some point during the conversation, Cassandra abruptly ceased the conversation, turned around, went into the apartment and tried to close the door on the defendants. Ex. E (Priore Dep.) at 38:2-4; Ex. F (Martin Dep.) at 48:19-21. Cassandra took a step or two into the apartment and, while at the threshold, Sergeant Martin told her that she was under arrest. Ex. F (Martin Dep.) at 50:19-25.

The defendants then entered the apartment because, based on the information received from Cassandra's daughter, they believed that Cassandra possibly had a firearm and other evidence inside the location that could potentially be disposed of, hidden, or used to create a danger to herself or the officers on scene. Ex. D (Sharma Dep.) at 111:18-25; 112:2-4; Ex. E (Priore Dep.) at 38:5-24; 39:3-12; Ex. F (Martin Dep.) at 50:16-23.

When the defendants entered the apartment, plaintiff Edd Alexander was in the kitchen area, close to the front door. Ex. E (Priore Dep.) at 41:12-15; Ex. F (Martin Dep.) at 49:13-18. Edd Alexander was handcuffed in the kitchen area. Ex. E (Priore Dep.) at 41:12-18; Ex. F (Martin Dep.) at 49:16-18. Sergeant Priore assisted in handcuffing Edd and stayed with him in the kitchen area. Ex. E (Priore Dep.) at 44:22-25; 45:2-23. Cassandra walked into the rear bedroom. Ex. D (Sharma Dep.) at 55:19-23. The bedroom lights were on and Cassandra turned them off to try and hide a bag of marijuana that was on the bedroom floor. Ex. C (Cassandra Dep.) at 88:8-16.

Cassandra was handcuffed in the rear bedroom by Detective Sharma with assistance from Sergeant Martin. Ex. D (Sharma Dep.) at 55:8-10; 55:25; 56:2-8. Cassandra would not place her hands behind her back when Detective Sharma was attempting to handcuff her. Ex. D (Sharma Dep.) at 56:13-17. Accordingly, Sergeant Martin then grabbed hold of Cassandra, allowing Detective Sharma to place a handcuff on her right wrist. Ex. D (Sharma Dep.) at 56:18-25. However, Detective Sharma was unable to get ahold of Cassandra's left arm and, accordingly, Sergeant Martin grabbed her left arm until Cassandra's left wrist was handcuffed. Ex. D (Sharma Dep.) at 56:18-25.

Thereafter, Cassandra mentioned or complained about the handcuffs to Detective Sharma. Ex. D (Sharma Dep.) at 61:10-21. During the time that Cassandra was handcuffed, Detective Sharma held onto her arm and she pulled him around the apartment, while being very angry and irate. Ex. D (Sharma Dep.) at 62:4-21; 63:6-21; 64:4. Given those circumstances, Detective Sharma did not believe that it would be safe to loosen the handcuffs. Ex. D (Sharma Dep.) at 62:4-21; 63:6-21; 64:4.

While inside the apartment on February 7, 2019, Sergeant Priore observed mail, or other certain documents, that listed Ms. Miller-Griffith as living at the residence. Ex. E (Priore Dep.) at 47:17-24. Sergeant Priore also observed marijuana on the kitchen table and inside the bedroom. Ex. E (Priore Dep.) at 66:2-19. While inside the apartment on February 7, 2019, Detective Martin observed marijuana on the bed in the bedroom. Ex. F (Martin Dep.) at 56:2-23. Sergeant Priore and Detective Sharma did not see any officers searching the apartment on February 7, 2019. Ex. E (Priore Dep.) at 44:18-21; Ex. D (Sharma Dep.) at 65:23-25. Moreover, Detective Sharma did not open an drawers or cabinets or search the residence on February 7, 2019. Ex. D (Sharma Dep.) at 65:16-22.

After Edd was escorted outside the apartment, a show up identification procedure was conducted, and Ms. Miller-Griffith positively identified him. Ex. D (Sharma Dep.) at 94:24-25; 95:2-6; Ex. E (Priore Dep.) at 82:11-16. After plaintiffs were escorted out of the apartment, it was frozen pending a search warrant application, during which time an NYPD officer stood outside of the apartment. Ex. E (Priore Dep.) at 53:17-24; 54:17-20. After plaintiffs were escorted out of the apartment, Sergeant Priore had no further involvement with them. Ex. E (Priore Dep.) at 55:5-16. While plaintiffs were at the police precinct, Detective Sharma does not believe that he interacted with them, saw them, or spoke with them. Ex. D (Sharma Dep.) at 92:6-25; 93:2-6.

A search warrant for the apartment was obtained and executed on February 8, 2019. Ex. E (Priore Dep.) at 93:11-20; 94:7-16. Between the time that Sergeant Martin left the apartment on February 7, 2019 and the search warrant being executed on February 8, 2019, Sergeant Martin had a conversation with the District Attorney's Office about obtaining a search warrant and discussed the circumstances of what occurred and informed the district attorney that the officers wore body worn cameras. Ex. F (Martin Dep.) at 62:22-25; 63:2-24; 64:19-23.

On February 8, 2019, Sergeant Priore and Detective Sharma went to the District Attorney's Office so that the prosecutor could draft a search warrant. Ex. E (Priore Dep.) at 90:17-23. Detective Sharma spoke with the Assistant District Attorney ("ADA") regarding the case, investigation, and why they believed a search warrant was necessary. Ex. E (Priore Dep.) at 92:8-21. Sergeant Priore was not present during the entire time when Detective Sharma spoke with the ADA, but Sergeant Priore did not hear Detective Sharma say anything that he believed was inaccurate. Ex. E (Priore Dep.) at 90:24-25; 91:2-11; 91:18-21; 92:22-25. Detective Sharma

7

signed the search warrant affidavit after it was drafted by the ADA. Ex. D (Sharma Dep.) at 89:25; 90:2-4.

The affidavit included information that was provided by Ms. Miller-Griffith as well as information based on Detective Sharma's own observations. Ex. D (Sharma Dep.) at 90:5-13. Detective Sharma briefly reviewed the warrant affidavit prior to signing it and believed that contents were accurate. Ex. D (Sharma Dep.) at 97:2-9. If Detective Sharma had found something in the warrant affidavit that was inaccurate, he would have brought that to the District Attorney's attention. Ex. D (Sharma Dep.) at 97:10-14.

Detective Sharma did not hold the plaintiffs in custody while he obtained and executed the search warrant. Ex. D (Sharma Dep.) at 75:20-25; 76:2-3. However, they remained in custody at the police precinct through the time that Detective Sharma obtained and executed the search warrant. Ex. D (Sharma Dep.) at 76:4-21.

After the search warrant was executed, the apartment door was locked. Ex. D (Sharma Dep.) at 68:21-25; 69:2-24; Ex. E (Priore Dep.) at 65: 6-11. Sergeant Priore did not see any property that was damaged during the search of the apartment on February 8, 2019. Ex. E (Priore Dep.) at 68:6-9. During the search warrant execution, multiple items were recovered including an imitation pistol, a stun gun, a machete, a golf club, marijuana, scissors, empty baggies, and a metal grinder. Ex. C (Cassandra Dep.) at 121:15-25; 122:19-22; 123:2-4; 123:22-25; Ex. F (Martin Dep.) at 73:8-14.

## STANDARD OF REVIEW

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must resolve all ambiguities and draw all reasonable

8

inferences in the light most favorable to the party opposing the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). However, "this standard does not simply require the court to draw all inferences in the non-movant's favor, but [only] all reasonable inferences." Casciani v. Nesbitt, 659 F. Supp. 2d 427, 434 (W.D.N.Y. 2009) (emphasis added). In determining whether an inference is reasonable, the Court "need not…credit unsupported factual allegations and innuendos". Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp., No. 03-CV-1414 (MP), 2003 U.S. Dist. LEXIS 22655, at *2 (S.D.N.Y. 2003), citing Azurite Corp., Ltd. v. Amster & Co., 844 F. Supp. 929, 936 (S.D.N.Y. 1994). Neither must the Court "make unreasonable inferences from circumstantial evidence proffered by [the] non-movant." Tai-Sun Plastic Novelties, 2003 U.S. Dist. LEXIS 22655, at *2.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811 (2003). "Speculative and conclusory allegations…are not enough to defeat summary judgment." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 368 (S.D.N.Y. 2011). Stated differently, "[t]he mere possibility that a factual dispute may exist is insufficient to overcome a convincing presentation by the moving party." Tai-Sun Plastic Novelties, 2003 U.S. Dist. LEXIS 22655, at *2.

**ARGUMENT**

**POINT I**

**PLAINTIFFS CANNOT PREVAIL ON THEIR FALSE ARREST CLAIM BECAUSE THERE WAS PROBABLE CAUSE TO ARREST THEM FOR ASSAULT, AS WELL AS OTHER CHARGES**

Plaintiffs' false arrest claim fails as there was probable cause to arrest them on several offenses. The existence of probable cause to arrest constitutes justification and is a complete defense. Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995) (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993). Where there is probable cause to arrest for any offense, a false arrest claim is subject to dismissal. Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); see also, Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006)); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.") Further, when making an arrest, law enforcement officers are "entitled to rely on the victims' allegations that a crime has been committed." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); see also Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992) (The veracity of citizen complainants who are the victims of the very crime they report is assumed).

10

The crime of Assault in the Third Degree occurs when a person "with intent to cause physical injury to another person, [] causes such injury to that person." New York Penal Law § 120.00(1). Physical injury is defined as "impairment of a physical condition or substantial pain." N.Y. Penal Law § 10.00(9). Here, there was probable cause to believe that plaintiffs committed the crime of Assault in the Third Degree based on Ms. Miller-Griffith reporting to the defendants that on February 5, 2019, while she was trying to retrieve her clothing, both plaintiffs assaulted, beat and punched her, and her hand was slammed in a drawer by Edd Alexander, causing her pain. Ex. F (Martin Dep.) at 14:14-25; 15:2; Ex. D (Sharma Dep.) at 17:5-25; 18:2-6; 42:3-6; Ex. E (Priore Dep.) at 13:14-19.

At a minimum, there was probable cause to arrest plaintiffs for Attempted Assault in the Third Degree, in violation of New York Penal Law §§ 110/120.00(1). An attempt to commit a crime occurs when a person acts "with intent to commit a crime, [] and engages in conduct which tends to effect the commission of such crime." Clearly, the acts of punching, beating, and slamming a dresser drawer onto a person's hand were intentional and was conduct that tends to effect the commission of Assault in the Third Degree.

Furthermore, there was also probable cause to arrest plaintiffs for Harassment in the Second Degree, in violation of New York Penal Law § 240.26(1), which occurs when a person acts "with intent to harass, annoy or alarm another person, and strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." Clearly, plaintiffs subjected Ms. Miller-Griffith to physical contact when they beat and punched her, and slammed her hand in a drawer, causing her pain (Ex. F (Martin Dep.) at 14:14-25; 15:2; Ex. D (Sharma Dep.) at 17:5-25; 18:2-6; 42:3-6; Ex. E (Priore Dep.) at 13:14-19) and acted with the

11

intent to harass or alarm her. Accordingly, probable cause to arrest plaintiffs existed and a false arrest claim must fail.

Alternatively, defendants Martin, Sharma, and Priore are entitled to qualified immunity. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014); see also Wood v. Moss, 134 S. Ct. 2056, 2059 (2014);

"[T]he clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality."). The requirement that a right be clearly defined requires a considerable showing keyed to the particular circumstances the individual defendants confronted. "[I]n the light of pre-existing law the unlawfulness must be apparent. In other words, existing precedent must have placed the statutory or constitutional question . . . beyond debate." Occupy Nashville v. Haslam, 769 F.3d 434, 442-43 (6th Cir. 2014) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023, (2014); Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Courts have consistently affirmed that the defendants' actions must be so beyond the pale, and the right so distinctly defined, that not a single reasonable official could think that conduct lawful. That requirement acknowledges the split-second decisions that officers must make during uncertain situations. Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995) ("An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances.").

12

Here, there is no clearly established law prohibiting officers from arresting a suspected perpetrator for assault, or attempted assault, where a complaining victim reports that said perpetrator beat and punched her, and slammed her head in a dresser drawer. Indeed, as set forth *supra*, the penal law provides for an arrest in such a situation. At the very least, reasonable officers could disagree as to whether there was probable cause to arrest based on Ms. Miller-Griffith's account that plaintiffs physically attacked her. See Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992) (The veracity of citizen complainants who are the victims of the very crime they report is assumed).

## POINT II

### PLAINTIFFS' UNLAWFUL ENTRY CLAIM SHOULD BE DISMISSED

**A. Exigent Circumstances Justified the Warrantless Entry.**

Plaintiffs' unlawful entry claim should be dismissed because there were exigent circumstances justifying the warrantless entry. Payton v. New York, 445 U.S. 573 (1979).

Exigent circumstances have been found to exist whenever, though there is probable cause to search, urgent events make it impossible to obtain a warrant in sufficient time to preserve evidence or contraband threatened with removal or destruction. People v. Knapp, 52 N.Y.2d. 689, 696 (1981). People v. Richardson[1] is instructive. In Richardson, an officer knocked on an apartment door, the co-defendant opened the door and then tried to slam it after the officer asked to talk to him about the odor of marihuana coming from the apartment. Id at 1314. The officer placed his foot in the threshold preventing the co-defendant from closing the door, entered the apartment, and observed a large quality of cocaine. Id. A search warrant was later obtained, and the contraband was seized. The Court in Richardson ruled that the warrantless entry was lawful,

---

[1] 132 A.D.3d 1313 (4th Dept. 2015).

reasoning that exigent circumstances arose because there was probable cause to believe both that there was marijuana inside the apartment (based on the odor that emanated from the apartment) and that the co-defendant sold cocaine to a man the officer had arrested, as well as the co-defendant's attempted slamming of the door, stating that "it is well known that persons who engage in drug trafficking will often attempt to dispose of the narcotics or escape." Id. at 1315 (citing People v. Brown, 274 A.D.2d. 941, 942 (2000)).

Exigent circumstances could also exist where there is a risk that a firearm might be removed or used. For example, in People v. Vernon B.[2] a police officer observed defendant throw a gun into a backyard. There, because the risk that the gun might be removed or used to harm someone was concrete, and as the exigencies of the situation made it unreasonable to secure a warrant, the warrantless entry was found to be objectively reasonable. The court reasoned that the gun was potentially a lethal weapon, the occupants of the house had reason to know that police officers were on the premises and the gun was accessible to the occupants.

Here, prior to traveling to the apartment, defendants were informed by Ms. Miller-Griffith – Cassandra's daughter and a resident of the apartment – that Cassandra had a firearm in the apartment and was selling weed from the apartment. While in the hallway outside the apartment, based on their conversation, Cassandra was aware that her daughter had reported that she had been assaulted by both plaintiffs and that defendants were there to escort Ms. Miller-Griffith into the apartment. Because the defendant officers had probable cause to believe that there was marijuana and a firearm inside the residence, when Cassandra abruptly stopped speaking with the defendants in the hallway, walked into the apartment, and tried closing the door on them, exigent circumstances to enter the apartment arose. At the time of the entry, it was reasonable for defendants to believe that Cassandra would dispose of the marijuana or firearm

---

[2] 2012 N.Y. Misc. LEXIS 5253 (Kings Crim. Ct. 2012).

(or retrieve and use the firearm) if she was allowed back inside the apartment. Therefore, the officers' entry was lawful. At the very least, defendants are entitled to qualified immunity as reasonable officers could surely disagree as to whether exigent circumstances arose to enter the apartment when, while knowing that there was evidence inside the apartment that could be disposed of, or a firearm that could be used, the plaintiff attempted to flee inside her apartment after speaking with officers about a complaint made by her daughter.

**B.      Edd Alexander Does Not Have Standing to Challenge the Entry.**

Edd Alexander does not have standing to challenge the entry because he was merely a visitor in February 2019. Generally, an invitee or visitor to the premises, or a person in a third party's home, has no standing to challenge the search of the premises. See, e.g., Minnesota v. Carter, 525 U.S. 83, 90 (1998) (a person who is merely present with the consent of the householder may not challenge a warrantless entry of the premises); United States v. Brown, 596 F. Supp. 2d 611, 629 (E.D.N.Y. 2009) (holding that an invited guest had no protected privacy interest in the apartment); People v. Mercica, 170 A.D.2d 181 (1st Dept. 1991); People v. Symmonds, 111 A.D.2d 884 (2nd Dept. 1985); People v. Rodriguez, 2001 N.Y. Misc. LEXIS 776 (Bronx Co. Sup. Ct. 2001) (defendant, a visitor, failed to demonstrate that he had a reasonable expectation of privacy in his friend's home). It is undisputed that on February 7, 2019, Edd Alexander was not living at the residence and was merely visiting. Ex. G (Edd Dep.) at 14:11-19; 26:11-21; 27:5-14. As such, he has no standing to challenge the officers' entry.

**POINT II**

**THERE IS NOTHING IN THE RECORD TO SUPPORT   PLAINTIFFS'   CLAIM   OF UNREASONABLE SEARCH AND SEIZURE**

Plaintiffs' unreasonable search and seizure claim is based on an allegation that defendants proceeded to search the home after entering plaintiffs' home without a warrant or consent. (See

15

Ex. B (FAC)). Defendants did not search the apartment prior to securing a search warrant.  Ex. E

(Priore Dep.) at 44:18-21; Ex. D (Sharma Dep.) at 65:16-25; Ex. F (Martin Dep.) at 54:25; 55:2-

5; 61:16. Plaintiffs have put forth no evidence to the contrary and therefore the unreasonable

search and seizure claim, as alleged, should be dismissed.

**POINT III**

**PLAINTIFFS' CONSPIRACY CLAIM SHOULD BE DISMISSED BECAUSE IT IS UNDISPUTED THAT THE ALLEGED CONSPIRATORS ARE EMPLOYEES OF A SINGLE ORGANIZATION AND THEIR ALLEGED ACTIONS WERE TAKEN IN THE COURSE OF THEIR EMPLOYMENT**

Plaintiffs' conspiracy claim should be dismissed as a matter of law. As a dispositive

matter, "it is well-settled that there can be no actionable conspiracy under the civil rights laws if

the alleged conspirators are employees of a single organization and their alleged actions were

taken in the course of their employment." Hoffman v. Nassau County Police Department, No.

06-CV-1947, 2008 U.S. Dist. LEXIS 35377, at *15 (E.D.N.Y. 2008), citing Girard v. 94th St. &

Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir. 1976). Here, there is no dispute that defendants were

all NYPD officers and employees of the City, who were on duty at the time of the underlying

incident. As such, plaintiffs cannot sustain a conspiracy claim.

**POINT IV**

**PLAINTIFFS' FAILURE TO INTERVENE CLAIM FAILS BECAUSE PLAINTIFFS ALLEGE THAT ALL DEFENDANTS DIRECTLY PARTICIPATED IN UNLAWFULLY ENTERING THE RESIDENCE AND FALSELY ARRESTING THE PLAINTIFFS**

Plaintiffs' failure to intervene claim should also be dismissed as a matter of law. Law

enforcement officials have an affirmative duty to intervene to protect against the infringement of

16

constitutional rights from conduct committed by other officers in their presence. Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a failure to intervene claim, plaintiffs must prove: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; (3) the officer did not take reasonable steps to intervene. Jackson v. City of New York, 939 F. Supp. 2d 219, 231-32 (E.D.N.Y. 2013). However, when defendants are alleged to have directly participated in a constitutional violation, then they cannot be liable for failure to intervene. See Morgan v. County of Nassau, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010); see also Jackson v. City of New York, 939 F. Supp. 2d 219, 231-32 (E.D.N.Y. 2013) (Court has already concluded [that the two officers] both may be held liable under a theory of direct participation, therefore neither would be liable for failure to intervene). Here, plaintiffs allege that the individual defendants (Sharma, Martin, and Priore) directly participated in unlawfully entering the residence and in falsely arresting the plaintiffs, stating, "the individual defendants entered plaintiff's home without a warrant and in the face of express denial or consent to enter" and "the individual defendants restrained and arrested plaintiffs without probable cause." (See Ex. B (FAC)) As such, any failure to intervene claim fails.

## POINT V

### PLAINTIFFS' FABRICATION OF EVIDENCE
### CLAIM SHOULD BE DISMISSED

Plaintiffs' fabrication of evidence claim is premised on alleged false statements in the search warrant affidavit signed by Detective Sharma regarding the nature of the entry and search that took place on February 7, 2019. (See Ex. B (FAC)). To find that plaintiffs' constitution right to a fair trial was violated, plaintiffs must prove 1) that the defendants, 2) fabricated evidence, 3) that was likely to influence a jury's decision, 4) forwarded that information to prosecutors, and

5) plaintiffs suffered a deprivation of liberty as a result. Jovanovic v. City of New York, 486 Fed. Appx. 149, 152 (2d. Cir. 2012). An investigating official only fabricates evidence if he or she provides information to prosecutors that he or she believes is false. Garnett v. Undercover Officer C0039, 838 F.3d 265, 278 (2d Cir. 2016).

To be actionable for the purpose of a denial of fair trial claim, the allegedly fabricated evidence must be "material." Ashley v. City of N.Y., No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201, at *22 (E.D.N.Y. Apr. 17, 2017). Moreover, paperwork errors, or mere mistakes, by a police officer in making a written record is not a basis for finding a constitutional violation. McGhie v. Main, 2011 U.S. Dist. LEXIS 117606, at *5-6 (E.D.N.Y. 2011) (citing Adekoya v. Fed. Bureau of Prisons, 375 Fed. Appx. 119, 121 (2d Cir 2010)).

Here, plaintiffs allege that statements within the search warrant affidavit indicating that Detective Sharma informed Cassandra that she was under arrest and she thereby fled into her apartment, and that he saw Cassandra throw clothing onto the bed in a failed attempt to cover a ziplock bag of green leafy substance, were untrue and further claim that Detective Sharma affirmatively entered the darkened bedroom, turned on the lights, and searched Cassandra's bed without consent or probable cause. (See Ex. B (FAC)).

As indicated in the record, on February 8, 2019, Detective Sharma spoke with the Assistant District Attorney ("ADA") regarding the case, investigation, and why officers believed a search warrant was necessary. Ex. E (Priore Dep.) at 92:8-21. Detective Sharma signed the affidavit in order to obtain the search warrant. He briefly reviewed the warrant affidavit prior to signing and believed that everything in it was accurate at the time. Ex. D (Sharma Dep.) at 97:2-9. Those facts are undisputed and plaintiffs have set forth nothing to show that Detective Sharma knowingly and intentionally or with a reckless disregard for the truth made a false statement.

18

Instead, it is clear that any inaccuracy was a mere mistake, overlooked when he reviewed and executed the affidavit. Moreover, Cassandra Alexander admits that <u>she</u> turned off the bedroom lights to try and hide a bag of marijuana that was on the bedroom floor (<u>Ex. C</u> (Cassandra Dep.) at 88:8-18) and therefore it was entirely reasonable for Detective Sharma to turn on the lights in order to arrest her, especially while having information that there was possibly a firearm in the room.

Furthermore, as plaintiffs point out in the FAC, the incident was captured on body worn camera, lending further credence that any mistakes in the search warrant affidavit regarding the nature of the entry and events in the aftermath were unintentional, as Detective Sharma was aware that the events were being recorded. Therefore there is no basis for finding a constitutional violation. <u>See</u> <u>McGhie v. Main</u>, 2011 U.S. Dist. LEXIS 117606, at *5-6 (E.D.N.Y. 2011) (citing <u>Adekoya v. Fed. Bureau of Prisons</u>, 375 Fed. Appx. 119, 121 (2d Cir. 2010)).

The fifth element of a right to fair trial claim is a causation requirement, in which plaintiffs must show that the alleged fabrication of evidence led to a deprivation of liberty. <u>Jovanovic</u>, 486 Fed. Appx. at 152 (2d. Cir. 2012); <u>Ricciuti v. New York City Transit Auth.</u>, 124 F.3d 123, 130 (2d Cir. 1997). "To be a proximate cause, the misconduct must constitute a substantial factor in bringing about the harm." <u>Nnodimele v. Derienzo</u>, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *44 (E.D.N.Y. 2016) (citing <u>Hydro Investors, Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8, 15 (2d Cir. 2000)). Here, plaintiffs failed to provide any evidence that the misconduct at issue – the fabrication of evidence – constituted a substantial factor in depriving them of life, liberty, or property. Specifically, there is no evidentiary basis in the record to presume that plaintiffs suffered some deprivation of liberty that they otherwise would not have absent any fabrication of evidence. In fact, there is nothing in the record to

support that plaintiff's suffered a deprivation of liberty in excess of that attendant to their lawful arrests and/or their criminal prosecution.

Accordingly, plaintiffs' fabrication of evidence claim should be dismissed. See, e.g., Creese v. City of N.Y., 815 F. App'x 586, 591 (2d Cir. 2020) ("[t]he deprivation of liberty caused by Janeka's arrest was supported by probable cause, and Janeka identified no 'separate harm' that the alleged fabrication of N.D.'s identification of Janeka at Café Omar caused") (quoting Ganek v. Leibowitz, 874 F.3d 73, 91 (2d Cir. 2017)).

## POINT VI

**PLAINTIFFS' EXCESSIVE PRE-ARRAIGNMENT DETENTION CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS WERE ARRAIGNED IN LESS THAN 48 HOURS AND THERE IS NOTHING IN THE RECORD TO SUPPORT THAT THERE WAS AN UNREASONABLE DELAY IN THEIR ARRAIGNMENTS**

Plaintiffs' excessive pre-arraignment detention claims should also be dismissed. The Supreme Court has designated 48 hours as the "presumptive outside limit for confinement" prior to a probable cause determination. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Bryant v. City of New York, 404 F. 3d 128, 138 (2d Cir. 2005). Here, while the FAC alleges that plaintiffs were held for over 48 hours prior to arraignment, the record demonstrates that Edd was arraigned within 46 hours and 13 minutes and Cassandra was arraigned within 46 hours and 9 minutes See Ex. H (Edd OLPA); Ex. I (Cassandra OLPA).

Furthermore, there is nothing in the record to support that there was an unreasonable delay in plaintiffs' arraignments. Therefore, any claim for excessive detention should be dismissed.

20

**POINT VII**

**PLAINTIFF   CASSANDRA   ALEXANDER'S
EXCESSIVE   FORCE   CLAIM   MUST   BE
DISMISSED**

Plaintiff Cassandra Alexander's claim for excessive force must also fail as a matter of

law. Plaintiff Cassandra Alexander alleges that she was tightly handcuffed and experienced pain

and numbness. (See Ex. B (FAC)). A claim for excessive force in the context of a seizure is

analyzed under the Fourth Amendment to determine if the use of force was objectively

reasonable. See Scott v. Harris, 550 U,S. 372, 381 (2007). An officer's "application of force is

excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the

facts and circumstances confronting [him], without regard to [his] underlying intent or

motivation,'" Maxwell v. City of New York, 380 F,3d 106, 10S (2d Cir. 2004) (quoting Graham

v. Connor, 490 U.S. 386, 397 (1989)). However, "not every push or shove, even if it may later

seem unnecessary in the peace of a Judge's chambers, violates the Fourth Amendment , . , and

several courts in this Circuit have required plaintiffs to allege more than a de minimis use of

force to succeed on their excessive force claims." Nogbouv. Mayrose, 07 Civ. 3763 (RWS),

2009 U.S. Dist. LEXIS 96118, at*16 (S.D.N.Y. 2009), aff'd, 2010 U,S, App, LEXIS 24424 (2d

Cir. 2010).

To the extent plaintiff claims to have suffered any injury arising from the application of

handcuffs, courts have repeatedly held that "routine handcuffing at the time of arrest, absent

something more, cannot constitute a cognizable excessive force claim." See, e.g., Gil v. County

of Suffolk, 590 F, Supp. 2d 360, 371 (E,D.N.Y. 2008). Although handcuffing can give rise to an

excessive force claim where a plaintiff suffers a significant injury as a result, see. e.g., Gonzalez

v. City of New York, No, 98 Civ, 3084 (ILG), 2000 U.S. Dist. LEXIS 5230, at *13-15 (E.D.N.Y.

2000) (denying summary judgment where plaintiff presented expert testimony that he suffered

permanent injury from handcuffs and had requested that handcuffs be loosened), summary judgment is appropriate where, as here, there is no evidence of significant injury. See, e.g., Esmont v. City of New York, 371 F. Supp. 2d 202,215 (E.D.N.Y. 2005) (granting summary judgment where the plaintiff s claim of "diminished use of her left hand" was unsubstantiated by medical evidence); Usavage v. Port Auth. of New York & New Jersey, 932 F Supp 2d 575, 592 (SDNY 2013 (noting that "scarring and nerve damage" satisfy the injury requirement of a tight handcuffing claim); Drummond v, Castro, 522 F. Supp. 2d 667, 679 (S.D.N.Y. 2007) (granting summary judgment on excessive force claim, noting that "[p]laintiff fails to present any evidence apart from the tight handcuffs that would lead a reasonable juror to find that the police used excessive force" and that he did not suffer an injury from the handcuffs).

Even if an arrestee communicates the desire for an officer to loosen the arrestee's handcuffs, the officer is not required to do so in every case. Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir. 1990) ("loosening tight handcuffs may be the most compassionate action, [but] the failure to do so does not rise to a clearly established constitutional violation"); see, e.g., Alm v. Moreth, 694 F. Supp. 1322, 1324 (N.D.Ill. 1988) (no constitutional violation where plaintiff repeatedly stated that handcuffs were injuring him but handcuffs not applied in an abnormal manner, such as to cause bleeding). In this case, Cassandra initially resisted being handcuffed, and then proceeded to pull Detective Sharma around the apartment afterward while angry and irate. Under these circumstances, Detective Sharma did not believe that it was safe to loosen the handcuffs. Ex. D (Sharma Dep.) at 62:4-21; 63:6-21; 64:4. Similar to Hannula, Detective Sharma's decision not to loosen the handcuffs at that time does not rise to a Constitutional violation.

Moreover, plaintiff has not produced any medical evidence demonstrating that she suffered significant injuries to her wrists. See Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005) (Plaintiff must establish that the handcuffs were too tight and must support tight handcuff claims of injury with medical evidence); Hannula v. City of Lakewood, 907 F.2d at 132 (plaintiff presented no medical evidence of any sort showing injury to wrists; see also Brumfield v. Jones, 849 F.2d 152, 156 (5th Cir. 1988) (Tight handcuffing that is merely uncomfortable or painful does not constitute excessive force). Accordingly, Cassandra Alexander's excessive force claim must be dismissed.

### POINT VIII

### PLAINTIFFS' DUE PROCESS VIOLATIONS UNDER § 1983 CLAIM MUST BE DISMISSED

**A.      Plaintiff Has Failed to Allege a Brady Violation**

Plaintiffs' allegation that their due process rights were violated must also fail. "The basic rule of Brady is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001). A Brady violation occurs when: (1) the government acts deliberately or inadvertently; (2) to suppress favorable evidence due to its exculpatory or impeachment quality; and (3) the failure to disclose the evidence results in prejudice. United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004). A properly pled Brady claim must adduce facts that demonstrate the presence of all three elements.

Here, plaintiffs can make no such showing. Plaintiffs' due process claim alleges their due process rights were violated because defendants Sharma, Martin, and Priore allegedly "provided false evidence and statements and withheld exculpatory information to the prosecution, defense counsel, and court, including, but not limited to, the true circumstances of the entry into

Plaintiffs' home and their subsequent arrests." (See Ex. B (FAC)). The instant FAC is, on its face, based on pure speculation. Plaintiffs have not shown that any defendant suppressed evidence that was favorable to either plaintiff, or that the failure to produce such evidence prejudiced them. Instead, the record clearly demonstrates that the District Attorney's Office was provided with the information that was available to the defendants, including that the officers wore body worn cameras. Ex. F (Martin Dep.) at 62:22-25; 63:2-24; 64:19-23.

Moreover, plaintiffs' due process claim is generic on its face and is not distinct from other claims." See Wiles v. City of New York, 2016 U.S. Dist. LEXIS 148024, at *33 (S.D.N.Y. 2016) aff'd, 2018 U.S. App. LEXIS 5610; see also Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, at *37-38 (S.D.N.Y.2009) (dismissing a generic "Deprivation of Federal Civil Rights" claim where plaintiff only lists the constitutional amendments but failed to provide any information on the deprivation she allegedly experienced.) Based on the foregoing, this cause of action must be dismissed.

## POINT IX

## PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED

Plaintiffs failed to conduct any Monell discovery in this case, and therefore has nothing to rely upon in support of a municipal liability claim. Any Monell claim therefore quite clearly must be dismissed. See Berg v. Kelly, 343 F. Supp. 3d 419, 426 (S.D.N.Y. 2018) (upholding denial of motion for reconsideration of court's dismissal of Monell claim where plaintiffs "plaintiffs took no discovery addressing Monell liability."); see also Griffin v. City of N.Y., 287 F. Supp. 2d 392, 395 (S.D.N.Y. 2003) (failure to provide, after discovery, any evidence of the alleged municipal policy is "fatal" to plaintiff's § 1983 claims against City).

## CONCLUSION

For the foregoing reason, defendants City, Sharma, Martin, and Priore respectfully request that the Court grant their motion for summary judgment in its entirety, and dismiss all claims with prejudice and such other and further relief as this Court may deem just and proper.

Dated:     New York, NY
            January 9, 2023

                               **HON. SYLVIA O. HINDS-RADIX**
                               Corporation Counsel of the City of New York
                               *Attorney for Defendants City of New York, Sharma,*
                               *Martin, and Priore*
                               100 Church Street
                               New York, New York 10007
                               (212) 356-2386

                  By:     */s/ Ramy Louis*
                               Ramy Louis
                               *Senior Counsel*
                               Special Federal Litigation Division

cc: All Counsel of Record (by ELECTRONIC MAIL and ECF)